UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SNAP! MOBILE INC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CASEY O'DONNELL,<br><br>　　　　　　　Defendant. | CASE NO. C24-1536-KKE<br><br>ORDER GRANTING MOTION TO REMAND |

Plaintiff Snap! Mobile Inc. ("Snap") sues its former employee, Defendant Casey O'Donnell, for violating the non-solicitation and confidentiality provisions of a stock option agreement. Snap moves to remand the case because O'Donnell fails to show the amount in controversy exceeds $75,000. The Court grants the motion to remand.

## I.　BACKGROUND

Snap runs an online donation platform used by sports teams to raise money. Dkt. No. 1-1 ¶¶ 13–15. O'Donnell was employed by Snap from October 19, 2017, to February 15, 2024. *Id.* ¶¶ 20, 22. Snap alleges that during his employment, O'Donnell agreed to the Snap Option Agreement. *Id.* ¶ 21; Dkt. Nos. 17-1, 17-2. The Snap Option Agreement included non-competition, non-solicitation, and confidentiality provisions. Dkt. No. 17-2 at 17–20. After leaving Snap, O'Donnell began working with SchoolFundr, a competitor of Snap. Dkt. No. 1-1 ¶ 26. Snap alleges that through O'Donnell's work with SchoolFundr, he violated the non-

solicitation and confidentiality provisions of the Snap Option Agreement.  *Id.* ¶¶ 26–33.  On June 12, 2024, Snap sent O'Donnell a cease-and-desist letter.  Dkt. No. 17-5.

On August 23, 2024, Snap sued O'Donnell in King County Superior Court for breach of contract.  Dkt. No. 1-1.  On September 26, 2024, O'Donnell removed the case to this district under the Court's diversity jurisdiction (28 U.S.C. § 1332), arguing the parties are citizens of different states and "it is clear from the causes of action Plaintiff asserts the amount in controversy exceeds $75,000."  Dkt. No. 1 ¶¶ 6–10.  O'Donnell then moved to dismiss for lack of personal jurisdiction.  Dkt. No. 8.  The next day, Snap moved to remand.  Dkt. No. 9.  Both motions are fully briefed and ready for the Court's consideration.  Dkt. Nos. 14–22.

## II.    ANALYSIS

The Court will first decide the motion to remand and then, if it retains jurisdiction, will consider the motion to dismiss for lack of personal jurisdiction.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88 (1999) (district courts have discretion to consider subject matter jurisdiction before personal jurisdiction and vice versa).

**A.    Legal Standard on a Motion to Remand**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[.]"  28 U.S.C. § 1441(a).  Typically, it is presumed "that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).  Courts "strictly construe the removal statute against removal jurisdiction."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  A case should be remanded if there is any "doubt regarding the right to removal[.]"  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

O'Donnell removed this case based on the Court's diversity jurisdiction which requires "that the parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson*, 319 F.3d at 1090 (citing 28 U.S.C. § 1332). The parties dispute whether the amount in controversy is met. *See* Dkt. Nos. 9, 16, 20.

"[T]he removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson*, 319 F.3d at 1090; *see also Gaus*, 980 F.2d at 566 ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."). The amount in controversy can include "damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F. Supp. 3d 856, 871 (W.D. Wash. 2021) (citing *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)). The Court will consider "facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal. Conclusory allegations as to the amount in controversy are insufficient." *Matheson*, 319 F.3d at 1090–91.

**B.     O'Donnell Fails to Establish the Amount in Controversy Exceeds $75,000.**

Snap does not allege a specific amount of damages in its complaint but alleges it "is entitled to recover [Snap's] losses, attorney fees, costs, and litigation expenses[.]" Dkt. No. 1-1 at 7. Snap seeks injunctive relief, actual damages, "disgorgement of compensation Defendant received[,]" and prejudgment interest. *Id.* at 7–8. In response to Snap's motion to remand, O'Donnell argues the amount in controversy exceeds $75,000 because Snap seeks an injunction and Snap's cease-and-desist letter referenced a prior action against Daniel Chinea wherein Snap was awarded a judgment of $374,088.72, inclusive of attorney's fees. Dkt. No. 16 at 5–7. Snap replied to the

motion to remand differentiating the Chinea judgment and providing evidence of six similar incidents where Snap obtained solely injunctive relief or a monetary award less than $75,000. Dkt. No. 20. Snap also filed a notice of supplemental authority that Honorable Judge Martinez, a judge from this district, recently granted Snap's motion to remand in an identical case against a different ex-employee who went to work for SchoolFundr. *See Snap! Mobile, Inc. v. Miller*, No. C24-1569RSM, 2024 WL 4664094 (W.D. Wash. Nov. 4, 2024).[1] The Court does not find persuasive either of O'Donnell's arguments in opposition to remand.

First, O'Donnell does not provide evidence that Snap's sought injunction should be valued at over $75,000.

> The "value" of injunctive relief is determined by calculating the defendant's costs of compliance: "where the value of a plaintiff's potential recovery...is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes."

*Rodgers v. Cent. Locating Serv., Ltd.*, 412 F. Supp. 2d 1171, 1179–80 (W.D. Wash. 2006) (quoting *In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001)). Snap seeks an injunction to stop the "immediate and irreparable harm" from O'Donnell's breaches of the non-solicitation and confidentiality provisions of the Snap Option Agreement. Dkt. No. 1-1 at 7. O'Donnell argues the value of this injunctive relief exceeds $75,000 because Snap has raised over $900 million for its clients since 2014. Dkt. No. 16 at 5. O'Donnell's reasoning is flawed. Nothing about how much Snap has raised for its clients over ten years evidences the cost to O'Donnell of complying with the sought injunction, or the benefit to Snap from the injunction. Without more explanation of how Snap's total fundraising relates to the harm allegedly caused by O'Donnell, O'Donnell has

---

[1] A third complaint against another ex-employee who went to work for SchoolFundr is also pending in this district. *SNAP! Mobile Inc. v. Bullington*, No. 2:24-cv-01610-LK (W.D. Wash. filed Oct. 4, 2024) (motion to remand pending).

ORDER GRANTING MOTION TO REMAND - 4

failed to provide evidence of the value of the injunctive relief, let alone that it would exceed $75,000.

Second, the evidence of what Snap has recovered in similar actions favors remand. Both parties provided evidence of the outcome of other cases. *See* Dkt. Nos. 17-3, 21-1–21-6. While most cases cited resulted in damage awards to Snap far below the $75,000 jurisdictional threshold, most of those cases appear to arise from breaches of other types of contracts, not the Snap Option Agreement. Thus, their usefulness for demonstrating the potential damages here is limited. Dkt. Nos. 21-2, 21-4–21-6 (based on breaches of the Sales Representative Agreement), Dkt. No. 20 at 4 ("[T]he claims against Chinea were based on his Employment Agreement with Snap[.]"). But based on this record, the evidence of other judgments in similar matters, and noting the unique circumstances[2] that led to the Chinea judgment (Dkt. No. 20 at 7), the Court finds O'Donnell has not met his burden to show the amount in controversy exceeds $75,000. *See Miller*, 2024 WL 4664094, *2 ("Although it is reasonable for the Court to look at the Chinea judgment to inform the amount in controversy, ultimately it is inconclusive for the reasons cited by Snap….Snap has adequately demonstrated, with multiple examples, that it can bring a case such as this and obtain less than $75,000.").

Accordingly, the motion to remand is granted.

///

///

///

---

[2] The Court does not find it persuasive that the agreement in Chinea included a fee shifting provision and the Snap Option Agreement does not (Dkt. No. 20 at 4) because, whether Snap is entitled to attorneys' fees or not, Snap seeks recovery of its attorney's fees in its complaint. Dkt. No. 1-1 ¶ 41 ("Snap is entitled to recover its losses, attorney fees, costs, and litigation expenses for Defendant's breaches of contract.").

ORDER GRANTING MOTION TO REMAND - 5

### III.  CONCLUSION

For these reasons, the motion to remand is GRANTED. Dkt. No. 9. All pending motions are TERMINATED as MOOT. This case is hereby REMANDED to King County Superior Court.

The Clerk is instructed to close the case.

Dated this 10th day of December, 2024.

*Kymberly K. Evanson*
Kymberly K. Evanson
United States District Judge